746 So.2d 280 (1999)
NORTHWEST LOUISIANA PRODUCTION CREDIT ASSOCIATION
v.
STATE of Louisiana, DEPARTMENT OF REVENUE AND TAXATION.
No. 98 CA 1995.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
*281 Allen P. Jones, M. Allyn Stroud, Shreveport, Counsel for Plaintiff/Appellant Northwest Louisiana Production Credit Association.
Elizabeth Buroker Coffin, Baton Rouge, Counsel for Defendant/Appellee State of Louisiana, Department of Revenue and Taxation.
Before GONZALES, FITZSIMMONS, and WEIMER, JJ.
WEIMER, J.
The Northwest Louisiana Production Credit Association ("NLPCA") appeals a decision of the district court which granted summary judgment in favor of the State of Louisiana, Department of Revenue and Taxation ("State"), holding the NLPCA is subject to state taxation. Finding the trial court erroneously interpreted federal law, we reverse.

BACKGROUND
The NLPCA's status is undisputed. It is a federally chartered production credit association ("PCA") organized under federal law and domiciled in Arcadia, Bienville Parish, Louisiana. The NLPCA is a member institution of the Farm Credit System, a nationwide network of cooperative lending institutions chartered subject to regulation by the Farm Credit Administration ("FCA"), an agency of the United States government. The Farm Credit System and PCAs were created by Congress to implement the federal policy objective of providing farmers and other borrowers in the agricultural industry with a dependable source of credit. PCAs are formed by farmers, ranchers and/or producers pursuant to express authority granted by Congress for the purpose of providing agricultural *282 credit in a specific territory. 12 U.S.C. § 2071 et seq. Pleadings indicate it is undisputed a PCA's articles of association must be approved by the FCA, and upon approval, a PCA receives and operates under a charter issued by the FCA.[1]
The State assessed state income taxes and state sales taxes against the NLPCA for the tax years 1992, 1993, 1994, and 1995. The NLPCA paid the taxes and timely filed an administrative appeal with the Louisiana Board of Tax Appeals for recovery of the amounts paid, pursuant to LSA-R.S. 47:1481-1486. The State also imposed state income taxes and state sales taxes upon the NLPCA for the tax years 1996 and 1997 and expressed its intent to continue to impose those taxes in subsequent years.
On February 18, 1998, the NLPCA filed a petition for declaratory judgment in the Nineteenth Judicial District Court, seeking a judgment recognizing that the NLPCA is an instrumentality of the federal government, and declaring that the State's imposition of state income and sales taxes on the NLPCA violates the United States Constitution. The State filed an answer. The parties subsequently filed cross motions for summary judgment. The district court heard arguments on both motions on June 29, 1998, and ruled from the bench that the NLPCA's motion would be denied and the State's motion would be granted.[2] Judgment was signed on July 9, 1998, and the NLPCA perfected this devolutive appeal.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria as those governing the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Lejano v. Bandak, 97-0388, pp. 24-25 (La.12/12/97), 705 So.2d 158, 171.[3]
There are no factual disputes in this matter. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Gonzales v. Xerox Corporation, 320 So.2d 163, 165 (La.1975); State, Through Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, p. 5 (La. App. 1 Cir. 8/21/96), 694 So.2d 316, 319. Accordingly, we have examined the applicable law and conclude the district court erred.
In both its administrative appeal and its district court action, the NLPCA contested the validity of the taxes assessed and paid on the ground that the taxes violate the United States Constitution.[4] The issue is one of first impression in Louisiana, but has been addressed in Arkansas. See State v. Farm Credit Services of Central Arkansas, 338 Ark. 322, 994 *283 S.W.2d 453, 454 (1999).[5] We agree with the Arkansas Supreme Court that PCAs are immune from state taxation. For the following reasons, we hold: PCAs, including the NLPCA, are explicitly designated as federally chartered instrumentalities of the United States; the United States Constitution prohibits states from taxing instrumentalities of the federal government unless Congress has explicitly authorized such taxation; and Congress has not authorized state taxation of PCAs.
"Each production credit association and its obligations are instrumentalities of the United States ...." 12 U.S.C. § 2077 (1989). "Each production credit association shall continue as a Federally chartered instrumentality of the United States." 12 U.S.C. § 2071(a). Thus, PCAs are federal instrumentalities, clearly designated as such by federal statute. Once it has been determined that PCAs have been designated as federal instrumentalities, our inquiry extends only to a determination of whether Congress has waived the immunity and does not extend to the nature of the PCA, for there arises from the designation an implied immunity from state and local taxation. See Farm Credit Services of Mid-America v. Department of State Revenue, 705 N.E.2d 1089, 1092 (Indiana Tax Ct.1999) (absent congressional waiver, state taxation of federal instrumentalities is barred by the Supremacy Clause). The states have no power to impede, by taxation or otherwise, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the national government by the supremacy clause of the constitution. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 317, 4 L.Ed. 579 (1819).[6]
*284 In order for federal instrumentalities such as PCAs to be subject to state taxation, Congress must enact clear waivers of their exemptions. "[W]here there is federal immunity from taxation, Congress must express a clear, express, and affirmative desire to waive that exemption." Federal Reserve Bank of St. Louis v. Metrocentre Improvement Dist. # 1, City of Little Rock, Arkansas, 657 F.2d 183 (8th Cir.1981), aff'd, 455 U.S. 995, 102 S.Ct. 1625, 71 L.Ed.2d 857 (1982), citing United States v. City of Adair, 539 F.2d 1185, 1189 (8th Cir.1976), cert. denied, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 571 (1977).
There is no express waiver of constitutional immunity from taxes contained in 12 U.S.C. §§ 2071 or 2077. The fact that a former version of § 2077 specifically expressed exemption for PCAs'"capital, reserves, surplus, and other funds, and their income" is immaterial.[7] Where Congress is silent, the tax immunity of federal instrumentalities is implied. Farm Credit Services of Central Arkansas, PCA v. State of Arkansas, 76 F.3d 961, 964 (8th Cir.1996), rev'd on other grds., 520 U.S. 821, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997). With respect to federal instrumentalities, it is the waiver and not the immunity which must be explicit. Farm Credit Services of Mid-America v. Department of State Revenue, 705 N.E.2d at 1092.[8] We cannot presume, as the State suggests on appeal, that because Congress did not spell out the PCAs' exemption from state taxation that Congress did not intend for PCAs to be immune.
Nor is there any merit to the State's argument that because a prior version of the statute, adopted in 1933, provided that PCAs would not have tax exempt status when they became privately owned, Congress must have intended, when it deleted that provision in 1985, that PCAs would be subject to state taxation. Again, we cannot engage in rhetoric concerning what Congress "must have intended," as the State urges, in light of the requirement of an express waiver of immunity where there is specific statutory language that the PCA is a federal instrumentality, as found in 12 U.S.C. §§ 2071 and 2077.
The statute (§ 2077) is silent as to exemption from taxation of the PCAs, although it declares that "all notes, debentures, and other obligations" of the PCAs are exempt from state and federal taxation. On appeal, the State argues that because 12 U.S.C. § 2077 specifies these tax exemptions relative to PCAs, but does not mention state income or sales taxes, immunity from the latter was not intended. A similar argument is that because Congress specified comprehensive tax immunity for certain entities in the Farm Credit System, such as Farm Credit Banks, but did not do so for PCAs, Congress must have intended not to extend such immunity to PCAs. These arguments are without *285 merit, as they ignore the fact that Congress's designation of PCAs as federal instrumentalities automatically conferred immunity; further statutory language specifying immunity would have been superfluous. It is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. See United States v. Apfelbaum, 445 U.S. 115, 121, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980).
Accordingly, we reverse the judgment of the trial court granting the State's motion for summary judgment. We render judgment in appellant's favor declaring the Northwest Louisiana Production Credit Association is a federal instrumentality immune from imposition of state sales and state income taxes. We assess the State of Louisiana, Department of Revenue and Taxation, with all costs of this appeal, in the amount of $687.29.
REVERSED AND RENDERED.
NOTES
[1] For a discussion of the history of PCAs, see Judge Loken's dissent in Farm Credit Services of Central Arkansas, PCA v. State of Arkansas, 76 F.3d 961 (8th Cir.1996), rev'd on other grds, 520 U.S. 821, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997).
[2] The district court did not issue written reasons for its decision, and the oral reasons apparently were not transcribed.
[3] The parties acquiesced in this matter being decided on cross motions for summary judgment.
[4] Although the State denies a constitutional violation, the State has not contested the NLPCA's right to seek a declaratory judgment on the constitutional violation issue, because the Board of Tax Appeals does not have the authority to decide the constitutional violation issue. See Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 702, n. 8 (La.1993).
[5] The Arkansas Supreme Court provides the following history of the litigation at Note 1 of its opinion:

The PCAs simultaneously filed suit in the United States District Court for the Eastern District of Arkansas against the State of Arkansas, seeking a declaratory judgment that they were exempt from state taxation and for an injunction against collection of future taxes. In 1995, in an unreported decision, United States District Judge Henry Woods granted the PCAs['] motion for summary judgment, finding that their statutory designation as a federal instrumentality exempts them from state taxation under the implied immunity doctrine and that states cannot tax them in the absence of a statute which clearly and affirmatively waives this implied immunity. The Department appealed to the United States Court of Appeals for the Eighth Circuit, which upheld the district court's decision. Farm Credit Services of Central Arkansas, PCA[,] et al. v. State of Arkansas, 76 F.3d 961 (8th Cir. 1995[1996]) [rev'd on other grds, 520 U.S. 821, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997).].
The PCAs then moved for summary judgment in Pulaski County Chancery Court, on the grounds that appellant was collaterally estopped by the Eighth Circuit decision from relitigating the legal issue of the PCAs' entitlement to exemption. The Department responded with a petition for writ of certiorari to the United States Supreme Court, which was granted. The Pulaski County Chancery Court stayed its decision pending the outcome of the Supreme Court case. The Supreme Court did not address the merits of the exemption issue[,] but held that the federal court lacked jurisdiction under the Tax Injunction Act, 28 U.S.C. § 1341, to consider the merits when the question could be presented to a state court, and when the instrumentality was not joined by the United States as a co-plaintiff. Arkansas v. Farm Credit Services of Central Arkansas, et al., 520 U.S. 821, [117 S.Ct. 1776, 138 L.Ed.2d 34] (1997).
[6] The State argues on appeal that we should now look to the instrumentality's interests to determine if they are "so coterminous with those of the federal government [as] to render it tax-immune." Such an inquiry is inappropriate in the case of an instrumentality specifically designated a "federal instrumentality" by statute, such as the designations in 12 U.S.C. §§ 2071 and 2077. Such an inquiry is appropriate only if the specific statutory designation is absent, but because of the nature of the instrumentality, it should be declared a "federal instrumentality" by the court. For an example of this latter type case, see Department of Employment v. United States, 385 U.S. 355, 358-359, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966) (holding that the Red Cross is actually a federal instrumentality although it is not designated as such by Congress.) Thus, the State's argument, which ignores the distinction between the two types of cases, is without merit.
[7] This argument was rejected by the court in State v. Farm Credit Services of Central Arkansas, 338 Ark. 322, 994 S.W.2d 453, 456 (1999). Likewise, it was rejected by the U.S. Eighth Circuit Court of Appeals in the companion case, Farm Credit Services of Central Arkansas, PCA v. State of Arkansas, 76 F.3d 961 (8th Cir.1996), although the provisions of the previous statute formed the basis for an articulate dissent in that case. See also Production Credit Association of Southeastern Missouri, et al. v. Director of Revenue, 1999 WL 53073 (Mo.Admin.Hrg.Com.1/14/99) which denied the exemption from state taxation based on construction of the relevant federal statutory provisions. Nevertheless, we find the well established rules regarding the necessity for an express waiver of immunity bar our assigning any significance to the previous statutory provision and its omission from the current statutory provision. In the instant case, Congress expressly designated PCAs as "federal instrumentalities" and is presumed to have that designation carry with it the immunity from taxation mandated by the Supremacy Clause of the United States Constitution.
[8] In Farm Credit Services of Mid-America v. Department of State Revenue, the Indiana Tax Court held an agricultural credit association, as a federal instrumentality, was immune from state taxation pursuant to the Supremacy Clause of the United States Constitution.